**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:24-cr-75 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| SETH DEAN, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Seth Dean's Motion to Dismiss Indictment. (ECF No. 18). Defendant alleges that 18 U.S.C. § 922(g)(1)—the statute under which Defendant is charged in this case—is unconstitutional on its face and as applied to him under current Supreme Court precedent. The Government responded in opposition, (ECF No. 19), and Defendant has filed a reply in support, (ECF No. 21). For the following reasons, Defendant's Motion is **DENIED.**

**I.  BACKGROUND**

On March 6, 2024, a federal grand jury indicted Defendant on one count of felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (ECF No. 12). The Indictment alleges that Defendant:

> knowing he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year, those being: Aggravated Robbery and Kidnapping, on or about September 10, 1998, in Case Number 1998CR00110 in the Portage County Court of Common Pleas, knowingly possessed in and affecting interstate commerce the following firearms[1] . . . and ammunition; said firearms and

---

[1] The Indictment lists 15 firearms found in Defendant's possession: (1) Glock, Model: 17, Caliber: 9mm Serial: YNE641; (2) Glock, Model: 19, Caliber: 9mm Serial: VRS61; (3) Glock, Model: 26, Caliber 9mm Serial: BEDG639; (4) Faxon Firearms, Model: FF-15 XRS, Caliber 5.56, Serial: FF-15-02092; (5) Remington, Model: 870 Tactical, Caliber: 12ga, Serial: RS08972W; (6) BCM, Model: BCM14, Caliber: 5.56, Serial: Wl 1376; (7) Zastava, Model: N-PAP M70, Caliber: 7.62x39, Serial: N-PAP048824; (8) Izhmash, Model: Saiga, Caliber: 7.62x39, Serial: 13412975; (9) Colt, Model: M4 Carbine, Caliber: 5.56, Serial: LE473930; (10) Sig Sauer, Model: 191, Caliber .45, Serial: 54B0l4587; (11) Heckler & Koch, Model: HK45, Caliber:.45 Serial: HKU0I 1913; (12) Glock, Model: 23, Caliber: .40S&W Serial: VMT768; (13) Glock, Model: 17. Caliber 9mm Serial: BAZW061; (14) Glock Model: 43X; Caliber:

1

ammunition having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(8).

(*Id.* at PageID #21–32). The Indictment also includes a demand that Defendant forfeit the firearms and ammunition at issue. (*Id.* at PageID #32–33).

On May 17, 2024, Defendant filed the instant motion to dismiss. (ECF No. 18). Defendant first argues that § 922(g)(1) is unconstitutional on its face, citing the analytical framework for Second Amendment challenges set forth in the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). (*Id.* at PageID #55–62). He contends that: (i) firearm possession is conduct covered by the Second Amendment; (ii) felons are included in the people protected by the Second Amendment; and (iii) the Government cannot demonstrate that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." (*Id.*). Defendant then argues that § 922(g)(1) is unconstitutional as applied to him. (*Id.* at PageID #62–65).

In response, the Government argues that felon-dispossession laws are constitutional under current Sixth Court precedent, and such laws remain constitutional even after the recent decision in *Bruen*; it asserts that this is so because: (i) there is a history and tradition of laws disarming persons who are not law-abiding, responsible citizens; and (ii) the *Bruen* test requires the existence of historical analogues, not historical twins, to justify restrictions on Second Amendment rights. (ECF No. 19, PageID #73–103). Finally, the Government argues that Defendant's as-applied challenge should be rejected because § 922(g)(1) is constitutional as applied to Defendant, and other felons, who have a criminal history of violent and dangerous felonies. (*Id.* at PageID #103–07).

---

9mm, Serial: BXBZ090 and G; and (15) Glock 43, Model: 43, Caliber: 9mm, Serial: ZST655. (ECF No. 12, PageID #31–32).

## II. MOTION STANDARD

Defendant's motion to dismiss is governed by Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which provides that a criminal defendant may move to dismiss an indictment for the Government's "failure to state an offense." An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Court must take the indictment's factual allegations as true and decide only whether the indictment is "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956); *see United States v. Williams*, 504 U.S. 36, 54–55 (1992) (limiting pretrial review of indictments to facial challenges).

## III. LAW AND ANALYSIS

### A. Current Second Amendment Precedent as to § 922(g)(1)

The Second Amendment of the Constitution provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In recent decades, the Supreme Court has interpreted the Second Amendment as codifying an individual person's right to possess a firearm, such as the "right to possess and carry weapons in case of confrontation" unrelated to militia service. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 4, 142 S. Ct. 2111 (2022) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783 (2008)); *see* Adam Winkler, *Gun Fight: The Battle Over the Right to Bear Arms in America* 95 (2013) (explaining that the Second Amendment was understood as a mechanism to keep the federal government from disarming militias until the 1960s, when scholars began advancing the now-embraced "individual rights" theory). In *Heller*, and

3

subsequently in *McDonald v. City of Chicago*,[2] the Supreme Court recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9.

However, in *Heller*, the Supreme Court noted that an individual's right to bear arms was not absolute, cautioning that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626. The Supreme Court reiterated this principle in *McDonald*. 561 U.S. at 786 (noting that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" and explaining that the holding in *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . ." (internal quotation marks and citations omitted)).

In *Bruen*, the Supreme Court noted that, after *Heller* and *McDonald*, lower courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 597 U.S. at 2. The *Bruen* Court explicitly rejected this two-step analytical framework because it involved "one step too many" and there was no support for "applying means-ends scrutiny into the Second Amendment context." *Id.* at 19. The Supreme Court set forth a text-and-history test for deciding the constitutionality of a challenged firearm regulation: first, the district court must decide whether the plain text of the Second Amendment covers an individual's conduct. *Id.* at 18. If the Second Amendment's text covers a person's conduct, then the law is presumptively unconstitutional, and the government has

---

[2] 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

the burden of demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individuals' conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

While *Bruen* rejected the means-end test applied by appellate courts after *Heller*, it did not overrule *Heller* or otherwise call its reasoning into question. First, the Supreme Court clarified that *Heller* did not apply the faulty means-end test but had applied the same text-and-history test applied in *Bruen*. *See Bruen*, 597 U.S. 22–24 (explaining that "*Heller's* methodology centered on constitutional text and history" and it also "decline[d] to engage in means-end scrutiny generally"); *id.* at 26 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.").

Second, "*Bruen* does not upset the Supreme Court's consistent endorsement of felon disarmament." *United States v. Keels*, 680 F. Supp. 3d 841, 848 (E.D. Mich. 2023) (explaining that the *Bruen* Court reaffirmed the holdings in *Heller* and *McDonald* and the principle that felon-in-possession laws were presumptively constitutional). A majority of the *Bruen* Court—six justices in total—emphasized that the Supreme Court's decision did not overrule or abrogate *Heller* or any of the reasonable restrictions and regulations discussed in that opinion, including felon-in-possession laws. *See id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80 (Kavanaugh, J., joined by Roberts, C.J.,

5

concurring) ("[A]s *Heller* and *McDonald* established and the Court today again explains . . . the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)); *id.* at 80–81 (reiterating that "the right secured by the Second Amendment is not unlimited. . . . Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." (quoting *McDonald*, 561 U.S. at 786) (alteration adopted)); *id.* at 129 (Breyer, J., joined by Kagan, J. and Sotomayor, J., dissenting). ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller's* holding [prohibiting felons from possessing firearms].").

Recently, in *United States v. Rahimi*, the Supreme Court endorsed the power of Congress to disarm certain individuals by upholding the constitutionality of 18 U.S.C. § 922(g)(8)—a related subsection under § 922(g) that prohibits the possession of firearms by a person subject to a domestic violence restraining order. 144 S. Ct. 1889, 1902–03 (2024). The *Rahimi* Court reaffirmed the assertions in *Heller* that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626, 627, n.6); *see also id.* at 1901 ("[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse, . . ." (citing *Heller*, 554 U.S. at 626)); *id.* at 1923 (Kavanaugh, J., concurring) (noting that *Heller* "recognized a few categories of traditional exceptions to the [Second Amendment] right" and indicated that "longstanding prohibitions on the possession of firearms by felons . . . are presumptively constitutional"). *Rahimi* also clarified how courts should approach the text-and-history test set forth under *Bruen*. The Supreme Court explained that the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791" and thus it does not require a "dead ringer or historical twin" to justify

a modern firearm restriction. *Id.* at 1897–98 (quoting *Bruen*, 597 U.S. at 30). Rather, when applying *Bruen*, a district court should consider whether the relevant restriction is "consistent with the *principles* that underpin our regulatory tradition" and ascertain whether that restriction is "'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 29) (emphasis and alteration in original). Finally, courts should consider "[w]hy and how the regulation burdens the right" to bear arms. *Id.* at 1898 ("For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.").

Before *Bruen*, in *United States v. Carey*, the Sixth Circuit rejected a defendant's challenge to § 922(g)(1) and explicitly held that felon-in-possession statues do not violate the Second Amendment, relying on *Heller* and *McDonald*. *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). The Court is bound by this published decision "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting *en banc* overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); *see RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 390 (6th Cir. 2021). "Even when intervening Supreme Court authority has modified an area of law in some respects, a district court must be 'extremely careful' and should only depart from binding circuit precedent 'where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.'" *United States v. Gibson*, No. 3:23-cr-329, 2024 U.S. Dist. LEXIS 67735, at *3–4 (N.D. Ohio Apr. 15, 2024) (quoting *Hollis v. Erdos*, 480 F. Supp. 3d 823, 832 (S.D. Ohio 2020)).

After reviewing the Supreme Court's decisions in *Bruen* and *Rahimi*, as well as caselaw since the issuance of those decisions, the Court finds that *Carey* remains binding precedent. First, the *Carey* panel did not apply the two-step means-end framework that was rejected by the Supreme Court in *Bruen*. *United States v. Robinson*, No. 1:23-cr-660, 2024 U.S. Dist. LEXIS 97627, at *5 n.2 (N.D. Ohio June 3, 2024); *Gibson*, 2024 U.S. Dist. LEXIS 67735, at *5–6. Second, *Carey* relied on the assertions in *Heller* that "*nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons*" and "the Second Amendment right is not unlimited, and, in fact, it is specifically *limited* in the case of felon prohibitions." *Carey*, 602 F.3d at 741 (quoting *Heller*, 554 U.S. at 626) (emphasis in original). As discussed above, *Bruen* did not overrule but, instead, reiterated the assertions on which the *Carey* panel relied.

Third, the Sixth Circuit has issued several post-*Bruen* opinions that have described *Carey* and its progeny as still binding precedent. In *United States v. Vaughn*, the Sixth Circuit denied a defendant's motion for release pending appeal that challenged the constitutionality of the defendant's § 922(g)(1) conviction after concluding that:

> [W]e unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit. While we have not yet revisited this issue following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), and although there are numerous appeals pending before us that raise the issue, the vast majority of courts to have reconsidered the constitutionality of § 922(g)(1) post-*Bruen* have upheld it. *See, e.g., United States v. Gleaves*, 654 F. Supp. 3d 646, 2023 U.S. Dist. LEXIS 20328 at *1, 2023 WL 1791866 (M.D. Tenn. 2023) (collecting cases). *Carey* remains the precedent in this circuit.

No. 23-5790, 2023 U.S. App. LEXIS 25818, at *3. Similarly, a panel in *In re Clark*, denied permission to file a second or successive habeas petition challenging the constitutionality of a § 922(g)(1) conviction, after concluding that *Bruen* did not "cast doubt on longstanding prohibitions on possession of firearms by felons." No. 23-1401, 2023 U.S. App. LEXIS 30481,

8

\*3 (6th Cir. Nov. 15, 2023) (quoting *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring)). Moreover, the majority of district courts in the Sixth Circuit have concluded that *Carey* remains good law and binding precedent post-*Bruen*. *See United States v. Cooper*, No. 1:14-CR-438-2, 2024 U.S. Dist. LEXIS 98435, at \*3–4 & n.3 (N.D. Ohio June 3, 2024) (collecting cases); *United States v. Guy A. Long*, No. 1:23-CR-635, 2024 U.S. Dist. LEXIS 41655, at \*5 (N.D. Ohio Mar. 8, 2024) (collecting cases); *United States v. Freeman*, No. 23-20258, 2024 U.S. Dist. LEXIS 16213, at \*10–11 (E.D. Mich. Jan. 30, 2024) (collecting cases); *United States v. Jttonali One Eye El Bey*, No. 1:21-cr-110, 2024 U.S. Dist. LEXIS 538, at \*6 (S.D. Ohio Jan. 2, 2024) ("This Court finds that the Sixth Circuit decision in *Carey* upholding the constitutionality of 18 U.S.C. § 922(g)(1) remains good law after *Bruen* and this Court therefore remains bound by that precedent.").

For these reasons, the Court finds that *Bruen* altered the analytical framework for addressing Second Amendment challenges, but it did not explicitly overrule *Heller*. More importantly, it did not abrogate the assertions in *Heller* regarding the constitutionality of felon-in-possession statutes that supplied the foundation of the Sixth Circuit's decision in *Carey*. *Rahimi* clarified the *Bruen* test, in some ways softening it, but it also reaffirmed *Heller's* assertions concerning the constitutionality of disarming felons. Accordingly, the Court concludes that *Carey* remains binding precedent.

Even if the Court were to find that *Carey* is no longer binding, it would be persuaded by the near unanimous weight of authority post-*Bruen* rejecting constitutional challenges to § 922(g)(1) and finding that the statute is consistent with the Second Amendment. Since *Bruen*, federal appellate courts have consistently upheld the constitutionality of § 922(g)(1) under the constitutional framework set forth under *Bruen*. *See United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) ("Indeed, no federal appellate court has held that Section 922(g)(1) is facially

unconstitutional, and we will not be the first."); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (holding that *Bruen* did not abrogate *Heller* and Eleventh Circuit precedent upholding the constitutionality of § 922(g)(1)); *United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) (upholding the constitutionality of § 922(g)(1)); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (same); *see also Keels*, 680 F. Supp. 3d at 849 ("Post-*Heller*, every appellate court has upheld the constitutionality of restrictions on the possession of firearms by felons under section 922."). Similarly, nearly all district courts inside and outside the Sixth Circuit have upheld the constitutionality of § 922(g)(1). *See, e.g.*, *Robinson*, 2024 U.S. Dist. LEXIS 97627, at *7 (collecting cases); *United States v. Johnson*, No. 1:23-cr-00628, 2024 U.S. Dist. LEXIS 128302, at *5–9 (N.D. Ohio July 22, 2024); *United States v. Williams*, No. 3:23 CR 113, 2024 U.S. Dist. LEXIS 101336, at *4–6 (N.D. Ohio June 7, 2024); *United States v. Foster*, No. 3:23-cr-56-RGJ, 2024 U.S. Dist. LEXIS 20482, at *3 (W.D. Ky. Feb. 5, 2024); *United States v. Omar*, No. 2:22-cr-182, 2023 U.S. Dist. LEXIS 203650, at *8–9 (S.D. Ohio Nov. 14, 2023); *United States v. Dorsey*, No. 2:22-cr-20122-MSN, 2023 U.S. Dist. LEXIS 213706, at *10–12 (W.D. Tenn. Nov. 30, 2023); *United States v. Berry*, No. 5:22-cr-536, 2024 U.S. Dist. LEXIS 45670, at *61 (N.D. Ohio Mar. 15, 2024); *United States v. Gleaves*, 654 F. Supp. 3d 646, 650–51 (M.D. Tenn. 2023) (collecting cases); *United States v. Fenderson*, No. 1:19 CR 498, 2024 U.S. Dist. LEXIS 107940, at *4–6 (N.D. Ohio June 18, 2024); *see also United States v. Lusk*, No. 2:24-CR-012-Z-BR-(1), 2024 U.S. Dist. LEXIS 126315, at *22 (N.D. Tex. July 17, 2024) ("In fact, since *Bruen*, almost 141 district courts within the Fifth Circuit have . . . rejected" constitutional challenges to Section 922(g)(1) under the Second Amendment.").

Having found that *Carey* remains binding precedent, Defendant's arguments are foreclosed and both his facial and as-applied challenges to § 922(g)(1) fail.[3] The Court notes that Defendant's as-applied challenge would also fail because it is clear that, even if § 922(g)(1) were found to be unconstitutional when applied to certain defendants, it is certainly constitutional when applied to a defendant like him who has been convicted of a violent felony.[4]

To support his argument that § 922(g)(1) is unconstitutional as applied to him, Defendant primarily relies on two out-of-circuit cases—*Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc) and *United States v. Bullock*, 679 F. Supp. 3d 501, 504 (S.D. Miss. 2023). (*See* ECF No.18, PageID #62–65). However, the Court finds that these decisions do not affect the outcome of this case for several reasons. First, *Range* and *Bullock* are not binding on the Court. Second, they represent an extreme minority viewpoint when compared to the vast weight of the authority finding § 922(g)(1) to be constitutional.

Finally, the holdings in those cases are narrow and involve facts which are easily distinguishable from those in the instant case. In *Bullock*, the district court found that the government failed to meet its burden to establish that the restriction on firearm possession was

---

[3] In light of *Carey's* preclusive effect, and the overwhelming authority supporting the constitutionality of § 922(g)(1), the Court finds it unnecessary "'to conduct an in-depth analysis' of whether the felon-in-possession statute is consistent with the historical tradition of firearm regulation." *Keels*, 680 F. Supp. 3d at 849–50 (citations omitted).

Alternatively, the Court also finds that felon-in-possession statutes such as § 922(g)(1) have ample representative historical analogues. The Court finds that the Government's response brief sets forth numerous historical examples from the pre-founding era, founding era, and the post-founding era where the government disarmed individuals who were not law-abiding, responsible citizens. (*See* ECF No. 19, PageID #80–97). As stated in *Rahimi*, a contemporary law need not "precisely match its historical precursors" to "pass constitutional muster," and it "need not be a dead ringer or a historical twin." *Rahimi*, 144 S. Ct. at 1897–98. In this case, the examples provided by the Government do just that. The Court also adopts the thorough historical analysis provided in *Berry*, which found sufficient historical analogues to justify application of § 922(g)(1) to a defendant convicted of aggravated robbery under Ohio law, 2024 U.S. LEXIS 45670, at *36–59, as well as the historical analysis set forth in *United States v. Riley*, 635 F. Supp. 3d 411, 426–28 (E.D. Va. 2022), and *United States v. Head*, No. 23 CR 00450-1, 2024 U.S. Dist. LEXIS 90882, at *28–40 (N.D. Ill. May 21, 2024).

[4] The Court notes that Defendant's facial challenge also fails because a statute is facially unconstitutional only if it violates the Constitution "in all its applications." *See Bucklew v. Precythe*, 587 U.S. 119, 139 S. Ct. 1112, 1127, 203 L. Ed. 2d 521 (2019). Under current Supreme Court and Sixth Circuit precedent, and even under the minority approach adopted by certain courts since *Bruen*, it is abundantly clear that § 922(g)(1) is, at a bare minimum, constitutionally valid in circumstances involving defendants with prior violent felony convictions.

11

consistent with the nation's historical tradition of firearm regulation, with the court criticizing the government for only filing a three-and-a-half page response brief which the court found did not provide any example or examination of how American history supported § 922(g)(1).  679 F. Supp. 3d at 534–36.  By contrast, although this Court found an historical examination was unnecessary given current binding precedent, the government's response brief provided pages of historical analysis to support that there is a well-established history and tradition in this nation of restricting firearm possession for convicted felons.  (ECF No. 19, PageID #80–97).

In *Range*, the Third Circuit found that the government had "not shown that the Nation's historical tradition of firearms regulation supports depriving Range of his Second Amendment right to possess a firearm."  *Range*, 69 F.4th at 106.  But the *Range* court emphasized that its decision was "a narrow one" that was limited to the "as-applied" challenge presented by the defendant in that case.  *Id.*  In fact, there are many specific circumstances as to the underlying predicate conviction and as-applied challenge in *Range* that informed the court's decision:

> That holding turned on the fact that Range's underlying conviction was for a "nonviolent, non-dangerous" offense.  *Range*, 69 F.4th at 99; *see id.* at 104–05.  Indeed, the Third Circuit emphasized Range's unique circumstances: he was convicted of food stamp fraud almost 30 years prior, his criminal history since his 1995 conviction was "limited to minor traffic and parking infractions and a summary offense for fishing without a license," *id.* at 98, and he challenged the felon-in-possession statute as applied to him because he wanted to "possess a rifle to hunt and a shotgun to defend himself at home," not because he faced a criminal charge for violating the statute, *id.* at 103.  So the Third Circuit found in Range's favor because the government had not met its burden of showing "that our Republic has a longstanding history and tradition of depriving people like Range of their firearms."  *Id.* at 106 (emphasis added); *see, e.g.*, *id.* at 104 (concluding that "the earliest version of" the felon-in-possession statute "applied only to violent criminals" and thus was not a sufficient historical analogue).  But *Range* explicitly agreed that "the legislature may constitutionally strip certain groups of that right [to keep and bear arms]."  *Id.* at 102 (internal quotation marks omitted).

*Freeman*, 2024 U.S. Dist. LEXIS 16213, at *13–14.  None of these circumstances are present in the instant case.

12

Unlike the defendant in *Range*, Defendant was previously convicted of violent crimes: Aggravated Robbery and Kidnapping. (*See* ECF No. 1). These convictions stand in stark contrast and cannot be considered analogous to the conviction for food stamp fraud in *Range*. The Federal Firearms Act of 1938 prohibited those convicted of certain "crimes of violence" from possessing firearms. *See* Federal Firearms Act of 1938, Pub. L. No. 75-785, 52 Stat. 1250 (1938). Kidnapping was identified as one of the disqualifying offenses under the statute, as well as several theft related offenses—burglary, larceny, and robbery assault with a dangerous weapon. *Id.* Defendant was convicted of aggravated robbery for violating Ohio Rev. Code § 2911.01(A)(3), which provides that "no person, in attempting or committing a theft offense, . . . or in fleeing immediately after the attempt or offense, shall . . . inflict, serious physical harm on another." *See State v. Dean*, 2010-Ohio-5185, ¶¶ 4–6 (Ohio Ct. App. 2010). Defendant was also indicted and convicted of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(1) and/or (2), but that conviction was merged with his aggravated robbery conviction at sentencing. *See id.* Both crimes of conviction required some level of violence or the threat of violence against another. *See* Ohio Rev. Code § 2911.01(A)(3); *id.* § 2903.11(A)(1)–(2) ("No person shall . . . (1) Cause serious physical harm to another or to another's unborn; [or] (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."). Thus, even if the Court found *Range's* holding that § 922(g)(1) is unconstitutional as applied to a defendant who was convicted of a non-violent felony, that holding is inapplicable to this case. Contrary to Defendant's contention, even courts in the minority have not meaningfully questioned whether Congress has the ability to disarm individuals convicted of violent felonies. *See United States v. Gonzalez*, No. 22-1242, 2022 U.S. App. LEXIS 26532, at *6–7 (7th Cir. Sep. 22, 2022) (finding

13

that it would be "frivolous" to argue that § 922(g)(1) is unconstitutional as applied to someone convicted of a violent felony).

Courts have rejected "as applied" challenges to § 922(g)(1) under *Bruen* for individuals like Defendant who have past convictions for kidnapping and aggravated robbery. *United States v. Howard*, No. 24-20151, 2024 U.S. Dist. LEXIS 118954, at *19–20 (E.D. Mich. July 8, 2024) ("The defendant's kidnapping conviction, which is partially responsible for his section 922(g)(1) charge, is undoubtedly consistent with founding-era efforts to disarm dangerous individuals."); *El Bey*, 2024 U.S. Dist. LEXIS 538, at *9 (rejecting "as applied" challenge to § 922(g)(1) after finding that the defendant had previous convictions for felonious assault and kidnapping that were not analogous to the *Range* defendant's conviction); *United States v. Hudson*, No. 4:23-cv-526, 2024 U.S. Dist. LEXIS 105694, at *11–12 (N.D. Ohio June 14, 2024) ("As a result of his robbery and aggravated robbery convictions, Hudson would be unable to show that, even under the minority view, application of § 922(g)(1) post-*Bruen* was unconstitutional as applied to him."); *United States v. Miller*, No. 1:22-cr-645, 2023 U.S. Dist. LEXIS 165705, at *7–9 (N.D. Ohio Sep. 18, 2023) (rejecting "as applied" challenge post-*Bruen* because the defendant had prior convictions for burglary, burglary with intimidation, and aggravated robbery under Ohio law, noting that "[a]ll of these convictions involve some level of violence or the possibility of harm to others"); *United States v. Taylor*, 1:23-cr-289, 2023 U.S. Dist. LEXIS 161805, 2023 WL 5957107, at *3 (N.D. Ohio Sept. 12, 2023) (rejecting as-applied § 922(g)(1) challenge and distinguishing *Range* where the defendant was previously convicted of violent offenses, including aggravated robbery); *United States v. Jordan*, 680 F. Supp. 3d 850, 853 (N.D. Ohio 2023) (noting that "even if this Court were to adopt [the defendant's] theory that 'only dangerous persons' could be disarmed, his challenge would still fail" because he was convicted of dangerous crimes, including aggravated robbery);

14

*United States v. Bivens*, No. 1:22-cr-23, 2023 U.S. Dist. LEXIS 208527, at *11 (E.D. Tenn. Nov. 21, 2023) ("[The defendant] has prior convictions for Aggravated Robbery and Aggravated Burglary. As the Supreme Court noted in *Bruen*, the Second Amendment does not cover the right to bear arms "in a way that spreads 'fear' or 'terror' among the people." (quoting *Bruen*, 597 U.S. at 4)).

Because of his prior convictions for aggravated robbery and kidnapping, both of which involved the use or threat of violence, Defendant cannot demonstrate that § 922(g)(1) is unconstitutional as applied to him, even if *Carey* were not binding. Accordingly, Defendant's as-applied and facial challenges fail.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Indictment (ECF No. 18) is hereby **DENIED**. The Court will reset the trial schedule in this matter in a separate Order.

**IT IS SO ORDERED.**

Date: August 16, 2024

*/s/ Charles Fleming*

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**